UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREG BEECHE LOGISTICS, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 12-11121-DJC |
| v. ) | |
| ) | |
| SKANSKA USA BUILDING, INC., <u>et al.</u> ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION ON DEFENDANT SKANSKA
USA BUILDING, INC.'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, TO DISMISS THE AMENDED COMPLAINT
[Docket No. 87]

May 19, 2014

Boal, M.J.

Plaintiff Greg Beeche Logistics, LLC ("Beeche") brought this action against defendants Skanska USA Building, Inc. ("Skanska"), Wing Inc. Specialty Trades ("Wing") and Ron Mulcahey ("Mulcahey") for claims arising out of a construction project to renovate the Secretariat building at the United Nations Headquarters in New York City. On September 23, 2013, the District Court largely granted Skanska's motion to dismiss but allowed Beeche leave to amend the Complaint as to certain claims. Docket No. 72. On October 10, 2013, Beeche filed an Amended Complaint. Docket Nos. 75-81. Skanska has moved to strike or, in the alternative, to dismiss Beeche's Amended Complaint on the grounds that it does not comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure and does not cure any of the deficiencies that

1

warranted dismissal of those claims.[1] Docket No. 87. For the following reasons, this Court recommends that the District Court grant Skanska's motion to strike. In the event that the District Court disagrees with this Court's recommendation to strike the Amended Complaint for failure to comply with Rule 8, the Court recommends that the District Court grant in part and deny in part Skanska's motion to dismiss.

I. PROCEDURAL HISTORY

Beeche filed its complaint on June 22, 2012. Docket No. 1. Beeche also filed an Affidavit of Greg Beeche in support of the Complaint ("Beeche Aff."). Docket No. 6. On October 11, 2012, the Clerk entered a notice of default against Wing and Mulcahey. Docket No. 15.

On June 26, 2013, this Court issued a Report and Recommendation on Skanska's motion to dismiss the Complaint. Docket No. 48. This Court recommended that the Court grant in part and deny in part Skanska's motion to dismiss. Id.

On August 1, 2013, Beeche filed a motion to amend the Complaint. Docket No. 59. Beeche did not file a proposed Amended Complaint with its motion. Beeche filed a Renewed Motion for Leave to File Amended Complaint on September 17, 2013. Docket No. 63. The motion was accompanied by a proposed Amended Complaint. Docket No. 65.

On September 23, 2013, the District Court approved and adopted some, but not all, of this Court's recommendations. The District Court ordered that:

> [T]he portion of Count I (breach of contract) that related to Skanska's promise to pay for certain extra work and Count II (unjust enrichment) will stand; Counts I

---

[1] On December 3, 2013, the District Court referred the motion to the undersigned for a report and recommendation. Docket No. 90.

(the remaining portions that the magistrate judge recommended for dismissal), III (promissory estoppel), IV (intentional misrepresentation), VII (negligent misrepresentation), IX (third-party beneficiary liability) are DISMISSED WITHOUT PREJUDICE; and Counts VI (c. 93A claim) and XII (civil RICO claim) are DISMISSED WITH PREJUDICE. Also, in accordance with this Memorandum and Order, Beeche's motion to amend its complaint (asserted in its objections in D.59[2]) is ALLOWED only to the extent that it seeks to reassert Counts I (the portions of which were not recommended for dismissal) and II and amend its pleadings as to Counts I (the portions of which were recommended for dismissal), III, IV, VII and IX. Beeche shall have 21 days from the date of this Order to file an Amended Complaint. The Court notes that any such amended pleading must still comply with Fed. R. Civ. P. 8(a)(2), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief."[3]

Docket No. 72 at 9-10.

On October 10, 2013, Beeche filed the Amended Complaint. Docket Nos. 75-81. On November 12, 2013, Skanska filed its motion to strike, or in the alternative, dismiss the Amended Complaint. Docket No. 87. Beeche filed an opposition on November 21, 2013. Docket No. 89. Skanska filed a reply on January 2, 2014. Docket No. 97. This Court heard oral argument on May 14, 2014.

II.  FACTS[4]

The subject matter of the complaint is a construction project to renovate the Secretariat Building at the United Nations Headquarters in New York City (the "Project"). The United Nations, as owner, contracted with Skanska to act as construction manager for the Project under

---

[2] Footnote 2 of the District Court's decision, inserted at this point, states: "Given this Court's allowance now of D. 59, Beeche's original motion to amend the complaint, D. 63, its second motion to amend is DENIED AS MOOT." Docket No. 72 at 9.

[3] The original complaint was 96 pages and contained 543 numbered paragraphs.

[4] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Complaint and drawing all reasonable inferences in the Plaintiff's favor. See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

3

a Guaranteed Maximum Price Contract (the "Management Agreement"). Amended Complaint at ¶ 58 and Ex. 1.

On or about October 14, 2009, Skanska entered into a subcontract with Wing in which Wing agreed to perform demolition and other services to Skanska for a fixed fee (the "Skanska/Wing Agreement"). Amended Complaint at ¶¶ 125, 128-133 and Ex. 2. Wing then entered into a subcontract with Beeche on February 25, 2010 to provide scaffolding services to the Project (the "Wing/Beeche Agreement"). Amended Complaint at ¶ 154.

The Skanska/Wing Agreement provides, in relevant part, that:

> Subject to the written approval of [Skanska], [Wing] shall select Sub-Trade Contractors . . . Neither the Trade Contract nor any subcontract with a Sub-Trade Contractor shall create any contractual relationship between any Sub-Trade Contractor and either Owner or [Skanska], nor any payment or other obligation on the part of either Owner or [Skanska] to any Sub-Trade Contractor.

Skanska/Wing Agreement, Ex. E, § 2.25 (Docket No. 78 at 9).

The Wing/Beeche Agreement provides, in relevant part, that:

> The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between [Skanska] and [Wing] and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between [Skanska] and [Wing], whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral.
> . . .
>
> The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and [Beeche], (2) between [Skanska] and [Beeche], or (3) between any persons or entities other than [Wing] and [Beeche].

4

Wing/Beeche Agreement, §§ 1.1, 1.3 (Docket No. 6-1 at 5).[5] In addition, the Wing/Beeche Agreement provides:

> [Beeche] may be ordered in writing by [Wing], without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. [Beeche], prior to the commencement of such changed or revised Work, shall submit promptly to [Wing] written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised work in a manner consistent with requirements of the Subcontract Documents.
>
> . . . A claim which will affect or become part of a claim which [Wing] is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit [Wing] to satisfy the requirements of the Prime Contract.

Wing/Beeche Agreement, §§ 5.2, 5.3 (Docket No. 6-1 at 9).

Beeche alleges that "[t]here was a common design among Mulcahey, Wing, Skanska, and the United Nations as co-conspirators with a common purpose to commit wrongful acts directed against the subcontractors of Wing including Beeche, and common tortuous [sic] acts were taken by the co-conspirators against the subcontractors of Wing including Beeche in furtherance of that conspiracy." Amended Complaint at ¶ 79. Beeche alleges that Skanska and the United Nations knew that subcontractors would not provide services unless they believed that they would be paid for their work and that they agreed to represent to subcontractors that the United

---

[5] In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F.Supp.2d 204, 208 (D. Mass. 2000) (Harrington, J.), aff'd, 248 F.3d 1127 (1st Cir. 2000). Consideration of other materials is generally forbidden unless the motion is properly converted into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). The Wing/Beeche Agreement is attached to the Affidavit of Kirk Beeche (Docket No. 6) and incorporated by reference in the Amended Complaint (Amended Complaint at p. 3) and, therefore, the Court may consider it.

5

Nations would pay for contract and change order obligations notwithstanding the inability of the United Nations to pay such obligations when due. Amended Complaint at ¶ 80.

Beeche alleges that Skanska and Wing made a number of misrepresentations or concealed material information from Beeche in connection with the Project. First, Beeche alleges that Skanska concealed that there was no reasonable likelihood that the United Nations would be able to pay for work on the Project. Amended Complaint ¶¶ 20, 24. Second, Skanska concealed from Beeche that the United Nations is immune to liens and civil process and, therefore, Beeche would not be able to obtain a lien against the United Nations should Skanska and Wing fail to pay for Beeche's work. Amended Complaint at ¶¶ 26-29. Third, Skanska concealed from Beeche in the bid documents that the condition of the roof of the Secretariat Building would not permit the use of anchors affixed by epoxy to the roof for towers from which scaffolding could be suspended. Amended Complaint at ¶¶ 30-33. Fourth, Wing and Skanska concealed from Beeche that Wing did not post a payment or performance bond to secure payment to Beeche for labor and materials supplied to the Project. Amended Complaint at ¶¶ 34-38, 88. Fifth, Wing and Skanska concealed the financial weakness of Wing when Skanska asked Beeche to become a subcontractor of Wing. Amended Complaint, ¶¶ 39-42, 100, 103. Sixth, Skanska falsely represented that Beeche's leased equipment was insured against damage while on the Project. Amended Complaint, ¶¶ 107-109. Finally, Skanska represented that it would issue joint checks to Wing and Beeche if Wing did not pay Beeche and that Beeche would be paid "in any case." Amended Complaint, ¶¶ 116-117.

Beeche alleges that it provided goods and services to Skanska, Wing, and the United Nations with a value of $5,941,369.61. Amended Complaint at ¶ 351. Wing paid Beeche

6

$4,945,881.78. Amended Complaint at ¶ 352. Therefore, Beeche is owed $995,377.44. Amended Complaint at ¶ 359.

III.   ANALYSIS

Skanska argues that Beeche's Amended Complaint should be stricken with prejudice because it does not comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure, requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." Docket No. 88 at 6-8. In the alternative, Skanska argues that the Amended Complaint should be dismissed because it does not cure any of the substantive deficiencies in the original Complaint. Id. at 8-17.

   A.   Fed. R. Civ. P. 8(a)(2) and 9

Rule 8 of the Federal Rules of Civil Procedure provides that a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must give the defendant "fair notice of what the . . . claim is and the ground upon which it rests," Gargano v. Liberty Int'l Underwriters, Inc., 572 F. 3d 45, 48 (1st Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and a "meaningful opportunity to mount a defense . . ." Conley v. Massachusetts, No. 09-11108-NG, 2009 WL 2096207, at *4 n. 5 (D. Mass. July 7, 2009) (internal quotation marks and citation omitted). "What constitutes a short and plain statement must be determined in each case on the basis and nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters." Peabody v. Griggs, No. 08-243-ML, 2009 WL 3200686, at *2 (D.R.I. Oct. 6, 2009) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §

7

1217 at 240-41 (3d ed. 2004)). "A plaintiff properly pleads a claim for relief by '*briefly* describing the events' supporting the claim.'" Id. (citation omitted; emphasis in original).

Rule 8 also requires that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "The statement of the claim should be short because 'unnecessary length places an unjustified burden on the court and on the party who must respond to it.'" Peabody, 2009 WL 3200686, at *3 (citations omitted). If the complaint fails to comply with Rule 8, the District Court may dismiss it. Koplow v. Watson, 751 F. Supp. 2d 317, 320-321 (D. Mass. 2010).

Where, as here, the plaintiff makes allegations of fraud, those allegations must comply with Rule 9(b) of the Federal Rules of Civil Procedure. Pursuant to Rule 9(b), a party must state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) requires that a plaintiff's averments of fraud "specify the time, place, and content of the alleged false or fraudulent representations." United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004) (abrogation on other grounds recognized by U.S. ex rel Gagne v. City of Worcester, 565 F.3d 40 (1st Cir. 2009)). The purpose of this requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Id. (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)).

Rule 9(b) "supplements but does not supplant Rule 8(a)'s notice pleading." Peabody, 2009 WL 3200686, at * 3 (citations omitted). "Rule 9 does not reflect a subscription to fact pleading and requires only simple, concise, and direct allegations . . ." Id. (citation omitted).

Although the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544

8

(2007), "'retooled federal pleading standards . . . and retired the oft-quoted' Conley motion to dismiss 'no set of facts' standard, Twombly did not 'supplant the basis notice-pleading standard.'" Peabody, 2009 WL 3200686, at * 4 (internal citation omitted).

Beeche's Amended Complaint does not comply with Rule 8. It is not a short and plain statement of Beeche's claim. It contains 456 paragraphs over 122 pages and incorporates by reference lengthy exhibits, including the Affidavit of Kirk Beeche, which contains 248 pages of exhibits including a multitude of emails. Docket No. 6. It also includes legal argument and citations to legal authority. See, e.g., Amended Complaint, ¶¶ 15, 47, 79, 81, 124, 127, 169. When viewed in its totality, the Amended Complaint is rambling, repetitive, disjointed, and unclear. Responding to the Amended Complaint will necessitate significant effort to separate the wheat from the chaff. It also forces the Court and the Defendants to parse countless irrelevant and unnecessary allegations in order to determine what exactly Beeche alleges and whether the Amended Complaint states a claim upon which relief may be granted.

In the Amended Complaint, Beeche states that its length "is dictated by the multiple claims, multiple defendants and heightened pleading requirements of Fed. R. Civ. P. 9(b) . . ." Amended Complaint at p. 3. Although Rule 9(b) requires Beeche to plead its intentional misrepresentation claim with particularity, "Rule 9 is not a license to submit to the Court an unrestrained fact inundated opus," Peabody, 2009 WL 3200686, at *10, which is what Beeche has done in this case.

The Court also notes that this is the third complaint Beeche has attempted to file in this matter. In addition, when granting Beeche leave to amend its Complaint, the District Court specifically admonished Beeche to comply with Rule 8. Docket No. 72 at 10. Beeche did not so

9

comply. Even though the Complaint contains fewer claims, it is actually longer. It contains 122 pages, where the original complaint contained 96 pages. Accordingly, this Court finds that the Amended Complaint is subject to being stricken for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. If so stricken, the original complaint would become the operative complaint, and certain of Beeche's claims in Counts I and II of the original complaint would survive in accordance with the District Court's September 23, 2013 Order. See Docket No. 72 at 9.

Nevertheless, in the event that the District Court disagrees with this Court's recommendation to strike the Amended Complaint for failure to comply with Rule 8, the Court analyzes whether the Amended Complaint states a claim for which relief may be granted. As described in further detail below, Beeche has largely failed to cure the deficiencies in the original Complaint.[6]

    B.       Motion To Dismiss

    1.       Standard Of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A

---

[6] As set forth below, the Court finds that Beeche's claim for promissory estoppel would survive Skanska's motion to dismiss. In addition, the District Court had already ruled that Beeche stated a claim for breach of contract and for unjust enrichment and the Amended Complaint does not alter the analysis with respect to those claims. The fact that a portion of the claims would survive a motion to dismiss, however, is not inconsistent with striking the Amended Complaint altogether for failure to comply with Rule 8. The time and expense involved for Skanska to decipher and parse Beeche's overly detailed and unduly cumbersome Amended Complaint is unjustified and, therefore, striking the Amended Complaint is appropriate. See, e.g., Peabody, 2009 WL 3200686, at *10-11.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Decotiis v. Whittemore, 635 F.3d 22, 28-29 (1st Cir. 2011) (citation omitted). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 556 U.S. at 679.

2. Privity Or "Near Privity" (Counts I and VII)

This Court found, and the District Court agreed, that Beeche's claims for negligent misrepresentation and breach of contract[7] should be dismissed because Beeche had failed to allege sufficient facts to show that it was in privity or "near privity" with Skanska. Docket No. 48 at 14-15, 22-24. Negligent misrepresentation requires the existence of a special or privity-

---

[7] A portion of the breach of contract claim related to claims for extra work for which Skanska had promised to pay on May 27, 2011 and June 7, 2011 survived Skanska's motion to dismiss. Docket No. 48 at 24; Docket No. 72 at 4.

11

like relationship imposing a duty on the defendant to impart correct information to the plaintiff. Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1109 (N.Y. App. Ct. 2011) (citations omitted). Similarly, a plaintiff may not bring a breach of contract claim absent privity of contract. USA Bridge Constr. of N.Y. v. National Railroad Passenger Corp. (Amtrak), No. 98-CV-1999, 1999 WL 718078, at *3 (E.D.N.Y. 1999) (citations omitted).

New York courts have developed a "functional equivalent of privity" doctrine. One court has explained the doctrine as follows:

> It is a narrow exception to the rule that only parties in contractual privity can claim a breach of contract, and has developed in New York in two contexts, although the courts seem not to expressly recognize that the factors establishing liability, or the balance of such factors, under the doctrine might differ depending on which context applies.
>
> First, it is well established that one not in privity with another may have a claim for *negligence* against such party if (1) the parties were aware that the defendant's work was to be used for a particular purpose or purposes of the plaintiff, (2) there was reliance by the plaintiff on such work in furtherance of such purpose, and (3) there was some conduct by the defendant linking it to the plaintiff and evidencing defendant's understanding of plaintiff's reliance. Indeed, it has been stated, in dicta, that the doctrine is limited to negligence claims.
>
> On the other hand, several cases have applied the doctrine to *breach of contract* claims.
>
> * * *
>
> New York law does recognize that, even in the absence of a formal signed contract, the 'functional equivalent of privity' may exist in construction situations under certain circumstances when a project owner's and subcontractor engage in direct dealings. Such circumstances include, *inter alia*, (1) where the prime contract provided that the subcontractor would assume all obligations and responsibilities of the contractor; (2) the project owner and subcontractor had direct dealings such that the subcontractor knew the work being performed was for the benefit of the intended beneficiary of the agreement between the general contractor and the subcontractor; (3) the project owner assumed payment obligations toward the subcontractor, and (4) the project owner is the foreseeable and intended beneficiary of the agreement between the general contractor and the

> contractor. In these cases, the doctrine appears to overlap more closely with third-party beneficiary law or agency principles than in the negligence context, or, . . . the facts also involved the subcontractor's negligence to the owner.

Cavalry Constr., Inc. v. WDF, Inc., No. 07-22707, 2013 WL 5682741, at *3-4 (Bankr. S.D.N.Y. Oct. 18, 2013) (collecting cases; internal citations omitted; emphasis in original).

The Amended Complaint does not allege sufficient facts to show that Skanska and Beeche were in near privity. Beeche simply uses the words "near privity" or "direct privity" several times in the Amended Complaint, but no facts are alleged to support that legal conclusion. See, e.g., Amended Complaint at ¶¶ 160-161, 335, 338-341, 343-345, 348. While Beeche cites to certain provisions of the Wing/Beeche Agreement to try to support its privity argument, those provisions do not show privity or "near privity." For example, Beeche cites to Article 7.4.1 of the Wing/Beeche Agreement, which provides that in the event Skanska terminated Wing for cause, Skanska became the assignee of the Wing/Beech Agreement. Amended Complaint at ¶ 161 (citing to Docket No. 6-1 at 10). However, Beeche never alleges that Skanska terminated Wing for cause, thereby triggering Section 7.4.1 of the Wing Beeche Agreement. Beeche also alleges that "[w]hen Wing ceased operations and Skanska assumed the obligations of Wing under the Wing/Beeche Logistics Agreement, Skanska became in 'direct privity' with Beeche Logistics." Amended Complaint at ¶ 335. The allegation that Skanska assumed Wing's obligations under the Wing/Beeche Agreement, however, is a legal conclusion for which Beeche has not provided any factual support. Accordingly, the Court finds that, except for the breach of contract claim related to Skanska's promise to pay for certain extra work, Beeche has failed to state claims for breach of contract and negligent misrepresentation.

### 3. Promissory Estoppel (Count III)

"To establish a promissory estoppel it must be shown that the defendant made a clear and unambiguous promise upon which the plaintiff reasonably relied to his or her detriment." Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC, 51 A.D.3d 1169, 1170 (N.Y. App. Div. 2008) (citations omitted); see also Rogers v. Town of Islip, 230 A.D.2d 727, 727 (N.Y. App. Div. 1996).

Here, Beeche alleges that Skanska promised that Beeche would be paid for work performed under the Wing/Beeche Agreement, as well as the fifteen change orders requested by Skanska; that Skanska would issue joint checks at the request of Beeche;[8] and that Beeche would be paid "in all events" if Beeche agreed to contract with Wing. Amended Complaint at ¶¶ 367, 369-370. Beeche also alleges that in reliance on those representations, it provided labor and services to Skanska, and that Skanska accepted those services but failed to pay as promised. Amended Complaint at ¶¶ 367-370, 372-373. In addition, Beeche alleges that Skanska represented in the bid documents that Beeche would be insured against the risk of loss to rented equipment; that in reliance on that promise, Beeche did not procure its own insurance; that Beeche's equipment was damaged but that Skanska denied coverage for the damage to Beeche's property. Id. at 374-379.

Accordingly, Beeche has now alleged both a promise and reliance and, therefore, the Amended Complaint does state a claim for promissory estoppel against Skanska.

---

[8] At oral argument on Skanska's prior motion to dismiss, Beeche's counsel stated that Beeche did not rely on that representation and never requested the issuance of joint checks. In any event, the Amended Complaint alleges that Beeche relied on that representation, which the Court must take as true, and Beeche has adequately pled other promises on which it relied.

4. Fraudulent Misrepresentation Claims (Count IV)[9]

Count IV of the Amended Complaint alleges that Skanska made certain misrepresentations to Beeche. This Court had found that the original Complaint failed to allege fraud with particularity as to most of the alleged misrepresentations. Docket No. 48 at 10-11. As to those representations that Beeche did allege with particularity, this Court found that the representations were promissory in nature and, therefore, not actionable.[10] Id. at 12-13. Here, again, the only misrepresentation pleaded with particularity is the allegation that Skanska's Senior Vice President Daniel Kolakowski represented to Beeche that Skanska would issue joint checks and Beeche would be paid in any event. Amended Complaint at ¶¶ 394-395. Those representations are also promissory and, therefore, not actionable. Accordingly, the Court finds that Beeche has failed to plead a claim for intentional misrepresentation.

5. Fraudulent Concealment

Count IV of the Amended Complaint also alleges that Skanska concealed from Beeche the financial condition and inability of the United Nations to pay for the Project, the United Nations' immunity from civil liens and process, the financial condition and experience of Wing

---

[9] In its motion, Skanska argues that Beeche has failed to state a claim for civil conspiracy or conspiracy to defraud. Docket No. 88 at 8-10. Beeche, however, does not seek to bring an independent claim for civil conspiracy or conspiracy to defraud. See Docket No. 89 at 8-10. Instead, it seems that Beeche is alleging a conspiracy in support of its new punitive damages claim and in response to this Court's statement that Beeche may not attribute Wing's alleged misrepresentations to Skanska. See Docket No. 48 at 9 n. 4. Skanska is correct that Beeche's allegations regarding conspiracy are conclusory. In any event, the Court has already found that Beeche has failed to state a misrepresentation claim.

[10] As set forth in the Court's June 26, 2013 decision, New York law does not permit an action for fraud where the plaintiff alleges only that the defendant entered into a contract with no intention of performing. United Resource Recovery Corp. v. Ramko Venture Mgmt., Inc., 584 F. Supp. 2d 645, 659 (S.D.N.Y. 2008) (citations omitted).

15

and that Wing was not required to post payment and performance bonds for the Project. Amended Complaint at ¶¶ 388, 391-393. Those claims appeared in Beeche's original Complaint and were dismissed because Beeche had not alleged that Skanska had a duty to disclose the allegedly concealed information to it, that Skanska had superior knowledge regarding any of the topics of the allegedly concealed information or that Skanska knew that Beeche was acting on the basis of mistaken knowledge. Docket No. 48 at 14.

Although a cause of action alleging fraud may be predicated on acts of concealment, a plaintiff must allege that the defendant had a duty to disclose the concealed information. Spencer v. Green, 42 A.D.3d 521, 522 (N.Y. App. Div. 2007) (citations omitted). "In the context of a business transaction, the duty to disclose arises where a party, with a duty to be complete, has made only a partial or ambiguous statement, or 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 91 (2nd Cir. 2005) (citations omitted). Courts have found that the defendant did not have a duty to disclose when the information was available from other sources. See Congress Fin. Corp. v. John Morrell & Co., 790 F. Supp. 459, 473-474 (S.D.N.Y. 1992) (citing several examples).

Beeche cannot maintain a claim of fraudulent concealment based on Skanska's alleged failure to disclose the United Nations' immunity from civil liens and process and Wing's financial condition. Beeche has not alleged that information was unavailable to it. Indeed, the United Nations' immunity is a matter of law, which Beeche could have discovered by performing due diligence.[11] Similarly, Beeche has not alleged that it would not have been able to

---

[11] As the Court previously noted, whether or not the United Nations enjoys such immunity is a legal conclusion, not a factual statement and, therefore, could not give rise to a

discover Wing's financial condition had it performed some due diligence.

Beeche has alleged, however, that Skanska had special access to the United Nations that allowed it to assess the structure of the building, as well as the credit and ability of the United Nations to pay for the Project. Amended Complaint at ¶¶ 13-14. It has also alleged that bidders, including Beeche, were not given access to this information. Id. In addition, Beeche alleges that it would have been unable to determine whether Skanska had waived bonding requirements for Wing unless Skanska had informed it of that fact. Id. at ¶ 35.

Nevertheless, Beeche has not alleged that Skanska knew that Beeche was acting on the basis of mistaken knowledge. Without any allegations on that issue, the Amended Complaint fails to state a claim for fraudulent concealment.

6. Third-Party Beneficiary (Count IX)

In Count IX of the Amended Complaint, Beeche asserts that it has third-party beneficiary rights under the Skanska/Wing Agreement. A plaintiff may recover for breach of contract as a third-party beneficiary under New York law only by establishing (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for the plaintiff's benefit, and (3) that the benefit to plaintiff is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate plaintiff if the benefit is lost. Mandarin v. Wildenstein, 16 N.Y.3d 173, 182 (N.Y. App. Div. 2011); Ace Chrome Corp. v. Ibex Constr., LLC, No. 08 Civ. 10401, 2009 WL 2482136, at *3 (S.D.N.Y. Aug. 13, 2009).

"It is the generally accepted rule that the intent to confer a direct benefit on a third party must clearly appear in order to enable such a party, not named in the contract, to recover

---

fraud claim in any event. Cf. Tiberius Capital, LLC v. Petrosearch Energy Corp., No. 09 CV 10270, 2011 WL 1334839, at *10 (S.D.N.Y. Mar. 31, 2011).

17

thereunder." Logan-Baldwin v. L.S.M. General Contractors, Inc., 914 N.Y.S.2d 617, 621 (N.Y. Sup. Ct. 2011) (citation omitted). "There must be a 'clear intention to confer the benefit of the promised performance.'" Id. (citation omitted). "Absent such an intent, the third party is merely an incidental beneficiary with no right to enforce the contract." Id. (citations omitted).

When a general contract between the owner and general or other prime contractor includes an explicit negation of third party beneficiary rights, the provision is generally controlling. Greece Central School Dist. v. Tetra Tech Engineers, 78 A.D.3d 1701, 1702 (N.Y. App. Div. 2010). Here, Section 2.25 of the Wing/Skanska Agreement states that "[n]either the Trade Contract nor any subcontract with a Sub-Trade Contractor shall create any contractual relationship between any Sub-Trade Contractor and either Owner or [Skanska], nor any payment or other obligation on the part of either Owner or [Skanska] to any Sub-Trade Contractor." Docket No. 27-1 at 29. Similarly, Article 1.3 of the Wing/Beeche Agreement states that "[t]he Subcontract Documents shall not be construed to create a contractual relationship of any kind . . . (2) between [Skanska] and the [Beeche]. . ." Docket No. 6-1 at 5. Because the original Complaint did not allege any facts that would support a clear intention to confer a benefit on Beeche from the Wing/Skanska Agreement and, in light of the clear language in the parties' agreements that there would be no third-party beneficiaries, the Court found that Beeche had not stated a claim for third-party beneficiary rights. Docket No. 48 at 25-27.

The Amended Complaint adds allegations that "it can be inferred" that the requirements in the United Nations/Skanska Agreement and the Skanska/Wing Agreement that Wing submit payment applications on a timely basis and obligate Wing to pay Beeche for Beeche's work were "for the benefit of Wing's subcontractors seeking payment" and that both requirements "were

18

expressly and clearly intended to protect the interests of Beeche Logistics." Amended Complaint at ¶¶ 431-432, 434. The Court finds that those allegations do not support a clear intention to benefit Beeche sufficient to invoke third-party beneficiary rights. In light of the provisions stating that there would be no third-party beneficiaries, the Court finds that Beeche's claim fails as a matter of law.

### 7. Punitive Damages (Count IV)

Beeche's Amended Complaint adds a claim "for an award of punitive damages under Count[] IV . . . [for intentional misrepresentations against Skanska]."[12] Amended Complaint at p. 121. Because the Court has found that Beeche has not stated an intentional misrepresentation claim against Skanska, it also finds that it may not seek punitive damages against Skanska.

## IV. RECOMMENDATION

For the foregoing reasons, I recommend that the District Court grant Skanska's motion to strike the Amended Complaint. In the alternative, the Court recommends that the District Court grant in part and deny in part Skanska's motion to dismiss; allow Count I of the Amended Complaint (as it relates to claims for extra work requested by Skanska on May 27 and June 7, 2011 only), Counts II (unjust enrichment) and III (promissory estoppel) to proceed; and dismiss Counts I (the remaining portions of the breach of contract claim), IV (intentional misrepresentation), VII (negligent misrepresentation), and IX (third-party beneficiary) of the Amended Complaint as to Skanska.

## V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any

---

[12] The original Complaint sought punitive damages only against Wing under Count V.

party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

                                                     /s/ Jennifer C. Boal
                                                     JENNIFER C. BOAL
                                                     United States Magistrate Judge